IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01173-PAB-CBS

ROBERT E. MOSES,

    Plaintiff,

v.

JAMES E. HOVIS and
CATHERINE HOVIS,

    Defendants.

# ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 30]. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This action arises out of a April 11, 2010 investment agreement between plaintiff Robert E. Moses, Hearing Help Express, Inc. ("Hearing Help"), defendant James E. Hovis, and defendant Catherine Hovis. Docket No. 47-1.[2] At the time of the Agreement, Mr. Hovis was the chairman of Hearing Help's board. *Id*. at 2. The investment agreement is titled "Robert E. Moses Fixed-Interest Investment in Hearing

---

[1] The following facts are undisputed unless otherwise indicated.

[2] The Court cites the version of the investment agreement attached to the final pretrial order because the duplicate headers on the version attached to plaintiff's motion make its pagination illegible. *See* Docket No. 30-4 at 23-25. Ms. Hovis' full name appears to be Florence Catherine Hovis. Docket No. 36-6 at 2.

Help Express with 48-Month Stock Purchase Option," *id*., but is referred to herein simply as "the Agreement." Pursuant to the Agreement, plaintiff invested $120,000.00 in Hearing Help on February 12, 2010, which accrued interest beginning on the date of investment at 12.00% APR, compounded annually, with the balance of principal and interest to be paid to plaintiff "no later than forty-eight months after Date of Investment." *Id*. at 2, ¶ 1. For forty-eight months after investment, plaintiff had the option of converting his investment into stock in Hearing Help at a price of $40.00 per share. *Id*., ¶ 2. Additionally, the Agreement provided that, if Hearing Help was "not sold within forty-eight months, then the company shall repay the balance of Invested Funds and accrued interest at 12.0% APR and [James] Hovis shall make up the difference so that Investor has received 15.0% interest compounded annually." *Id*. at 3, ¶ 2; *see also* Docket No. 47-1 at 2 ("James E. Hovis . . . is confident that Investor named below will earn at least 15.0% compounded including the future value of Investor's stock option, and Jim Hovis and his wife Catherine Hovis therefore personally guarantee (1) the safety of this investment, (2) all payments to Investor, (3) Investor's achieving 15.0% APR compound interest (personally paying the difference between 12.0% and 15.0% appreciation if necessary), and (4) the fulfillment of Investor's stock purchase option."). If Hearing Help failed to make any required payments, plaintiff had the option to accelerate repayment, making the principal and accrued interest payable immediately after a five-day cure period. Docket No. 47-1 at 3, ¶ 6.

The Agreement includes guaranties of plaintiff's investment from both Mr. Hovis and Ms. Hovis. Mr. Hovis' guaranty states in relevant part that, "[a]s additional security to Investor, (i) Jim Hovis personally and absolutely guarantees all payments and

2

repayment of the Invested Funds." Docket No. 47-1 at 3, ¶ 7. Hearing Help and Mr. Hovis also agreed to pay plaintiff's "necessary and reasonable legal fees as due to enforce any provision" of the Agreement. *Id*. Mr. Hovis signed the agreement both as a "1st personal guarantor" and on behalf of Hearing Help as its chairman. *Id*. at 4. Ms. Hovis agreed that, six months after any default by her husband and/or Hearing Help, she would guarantee plaintiff's investment. *Id*., ¶ 8. Ms. Hovis signed the Agreement as "2nd personal guarantor." *Id*. at 4. The Agreement is governed by Illinois law. *Id.*, ¶ 9.

Before the Agreement was executed, Mr. Hovis supplied plaintiff with a one-page financial summary dated March 27, 2009. Docket No. 30-4 at 33. The summary lists his and his wife's combined net worth as $11,770,200. *Id*. Plaintiff claims the 2009 financial summary is misleading in various ways. Docket No. 30 at 9-10, ¶¶ 48-49. The main dispute focuses on two items. First, Mr. Hovis listed the River Road property he owned with a value of $2,000,000. *Id*. Plaintiff claims the summary overstates the value of the property by approximately $1 million. Docket No. 30 at 12.[3] Second, the 2009 financial summary lists a liability of $602,300.00 for "Net balance of loans to/from family-controlled corporations at 9% int." Docket No. 30-4 at 33. Defendants claim that this entry accurately summarizes the net liability from Mr. Hovis borrowing $3,823,845 from Hearing Help and another company he controlled and lending $3,221,572 to other

---

[3] Plaintiff attempts to rely on a later financial statement prepared by Mr. Hovis, but defendants argue the statement should be excluded as a statement made during settlement negotiations. Docket No. 36 at 7, ¶ 35; *see* Fed. R. Evid. 408(a)(2). Plaintiff does not dispute that the later financial statement was sent in response to his settlement proposal. The Court will not consider this statement.

companies. *See* Docket No. 30-4 at 37. Plaintiff claims that this vague description makes no mention of Mr. Hovis' obligation to repay Hearing Help more than $3 million and therefore is materially misleading. Docket No. 39 at 5; Docket No. 36-5.

Hearing Help made mortgage payments on plaintiff's home from March 2010 through July 2014. Plaintiff's Statement of Undisputed Material Facts ("PSUMF") 21, 23. Hearing Help's last mortgage payment occurred in July 2014. PSUMF 27.

On July 14, 2014, Hearing Help filed a voluntary petition for Chapter 11 bankruptcy. PSUMF 26; Docket No. 30-8 at 1; *In re: Hearing Help Express, Inc.*, No. 14-82161 (N.D. Ill. filed July 14, 2014).

In November 2015, plaintiff sent defendants a written demand for repayment under their guaranties. PSUMF 40. On January 19, 2016, plaintiff followed up by email with Mr. Hovis and asked Mr. Hovis and his wife to honor their personal guaranties; he also offered them a payment alternative. PSUMF 31; Docket No. 30-9. On January 27, 2016, Mr. Hovis responded and declined the payment alternative. PSUMF 32; *see also* Docket No. 30-10. Defendants have yet to pay any monies to plaintiff under their guaranties. PSUMF 40-41. However, plaintiff has received a payment of $7,471.52 from Hearing Help pursuant to its confirmed bankruptcy plan. Docket No. 39 at 4.

Plaintiff filed his complaint on May 18, 2016. Docket No. 1. Plaintiff brings claims of breach of the guaranties, fraud, and unjust enrichment against both defendants. *Id*. at 6-10. On February 7, 2017, plaintiff filed his motion for partial summary judgment as to two claims – breach of the guaranties and fraud. Docket No. 30.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party

may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

### A. Breach of Guaranties Claim

"To establish a prima facie case for enforcement of a guaranty under Illinois law, plaintiff must [1] enter proof of the original indebtedness, [2] the debtor's default, and [3] the guarantee." *Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, 693 F. Supp. 2d 796, 799 (N.D. Ill. 2010) (alterations and internal quotation marks omitted).

Defendants do not raise any genuine issues of material fact as to whether they have breached their guaranties under the Agreement. Defendants do not contest that Hearing Help owed plaintiff money, that Hearing Help defaulted on its payment obligations, and that defendants guaranteed those obligations. Defendants do, however, dispute whether the guaranties are unambiguous and the amounts due under the guaranties. Docket No. 36 at 14-15. Defendants also claim that the legal fees claimed by plaintiff are unreasonable and that they are unable to pay. *Id*. The Court addressees each of these issues in turn.

### *1. Ambiguity of the Guaranties*

"Under Illinois law, a guaranty is regarded as a legally enforceable contract that must be construed in accordance according to its terms, so long as they are clear and unambiguous." *Gen. Elec. Bus. Fin. Servs., Inc.*, 693 F. Supp. 2d at 800 (N.D. Ill., 2010) (internal quotation marks omitted). "[T]he guaranty's language is ambiguous only if it is 'susceptible to having more than one meaning.'" *Chromalloy Am. Corp. v. Fields*, 1992 WL 38975, at *2 (N.D. Ill. Feb. 26, 1992) (quoting *Flora Bank & Trust Co. v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. 1991)). "Whether a guaranty is ambiguous is a question of law." *Id*. (citation omitted).

Defendants claim that the guaranties are ambiguous because they "do not define whether the investment under-earning the 15% goal is a default, when the 'bonus' interest is payable,[4] or when a default is resolved." Docket No. 36 at 14, ¶ 67. The Court finds no ambiguity. While defendants are correct that the agreement does not explicitly define a default, it is clear that Hearing Help defaulted. The Agreement states that Mr. Hovis guarantees all of Hearing Help's payments to plaintiff in the event of Hearing Help's failure to make payments. *Id*., ¶ 7 ("Jim Hovis personally and absolutely guarantees all payments and repayment of the Invested Funds."). Likewise, it is clear that defendants' obligations to repay plaintiff have become due. PSUMF 27. Hearing Help's default on its payment obligations triggered Mr. Hovis' guaranty. *Id*. In November 2015, plaintiff notified defendants of Hearing Help's default and requested repayment. PSUMF 30-31, 40-41; *see also* Docket No. 30-9 at 2-3. With respect to

---

[4] The Court interprets defendants' reference to "bonus interest" to refer to the extra 3% of interest that defendants, not Hearing Help, promised under the Agreement.

7

Ms. Hovis, more than six months have passed since Hearing Help defaulted under the Agreement or Mr. Hovis defaulted on his guaranty. *See* PSUMF 32. Accordingly, Ms. Hovis' guaranty is also due. *Id*. at 4, ¶ 8. Finally, it is unambiguous that defendants guaranteed a 15% return. The Agreement provides that Mr. Hovis will "make up the difference so that Investor has received 15.0% interest compounded annually" if Hearing Help was not sold within forty-eight months, which did not occur. Docket No. 47-1 at 3, ¶ 2; *see also* Docket No. 30-10 at 2 (January 27, 2016 email discussing hope of selling Hearing Help). Defendants do not demonstrate that there are two reasonable interpretations of that language. Thus, the Court finds no ambiguity. Ms. Hovis, in turn, guaranteed her husband's obligations. *Id*. at 4, ¶ 8 ("Catherine Hovis (wife of Jim Hovis), personally guarantees all payments and actions required by Jim Hovis"). The Court perceives no ambiguity in this language. Therefore, the Court finds that the terms of the Agreement are clear and unambiguous and include defendants' obligation to guarantee a 15.0% return, compounded annually.

Moreover, even if defendants are correct that the guaranties are ambiguous, under the circumstances here, such ambiguities would not create a genuine issue of material fact precluding summary judgment. Interpretation of an ambiguous contract remains an issue of law if the extrinsic evidence bearing on the ambiguity is undisputed. *Moore v. Lomas Mortg. USA*, 796 F. Supp. 300, 303 (N.D. Ill. 1992) (citing *City of Clinton v. Moffit*, 812 F.2d 341, 344 (7th Cir. 1987)) (applying Illinois law). Defendants do not point to any disputed, extrinsic evidence that would bear on the interpretation of guaranties. *See* Docket No. 36 at 14, ¶ 67. Defendants do, however, argue that the

Agreement's recitals are not part of the Agreement, *id*. at ¶ 66, and thus would be parol evidence of the Agreement's meaning. *See Regnery v. Meyers*, 679 N.E.2d 74, 78 (Ill. App. 1997) ("a recital is merely an explanation of the circumstances surrounding the execution of the contract"). When considered as extrinsic evidence, the recitals reaffirm that defendants are obligated to personally pay the difference between a 15.0% return and the return plaintiff actually achieves. *See Borg-Warner Corp. v. Anchor Coupling Co.*, 156 N.E.2d 513, 516 (Ill. 1958) ("[I]f the terms and provisions of a contract are ambiguous, or if the writings are capable of more than one construction, parol evidence is admissible to explain and ascertain what the parties intended."). Specifically, the recitals state that "Jim Hovis and his wife Catherine Hovis . . . personally guarantee . . . Investor's achieving 15.0% APR compound interest (personally paying the difference between 12.0% and 15.0% appreciation if necessary)." Docket No. 47-1 at 2. The Court finds that defendants fail to raise any genuine issues of material fact with respect to plaintiff's claim to enforce defendants' guaranties.

### 2. *Amount Owed by Defendants*

Mr. Hovis states that plaintiff has received two payments from Hearing Help under Hearing Help's confirmed bankruptcy plan - one payment of approximately $10,000 and another of approximately $7,000. Docket No. 36-1 at 3, ¶ 8 (referencing the bankruptcy court's order confirming Hearing Help's plan of reorganization). Plaintiff acknowledges that, after filing his motion, he received a payment of $7,471.52, but he does not acknowledge any other payments. Docket No. 39 at 4. The Court finds that whether plaintiff has received an additional payment from Hearing Help is genuinely

9

disputed.

Defendants also argue that plaintiff improperly calculates the amounts due under the guaranties. Docket No. 36 at 15, ¶ 69. In particular, defendants note that the Agreement states that interest on the investment will be "compounded annually." Docket No. 47-1 at 2, ¶ 1 ("12% APR interest, compounded annually") and at 3, ¶ 2 ("15.0% interest compounded annually").

According to plaintiff, plaintiff was owed $133,408 as of January 16, 2017.[5] Plaintiff argues that his calculations, which were performed by plaintiff's expert Steven J. Shuster, are correct. Docket No. 39 at 3. Although not stated explicitly in his report, Mr. Shuster's calculations appear to compound interest monthly during the period that Hearing Help was making plaintiff's mortgage payment. Docket No. 30-4 at 20-21. *Id*. Thereafter, Mr. Shuster compounds interest on an annual or semiannual basis. *Id.* at 20-21. But these annual and semiannual periods for compounding interest do not correspond to periods falling annually after the original investment was made. *See id*. at 21. That is, the investment was made on February 12, 2010, but Mr. Shuster compounds interest on July 12, 2015 and 2016 and on January 16, 2017 without explanation. Docket No. 30-4 at 21. Because the Agreement unambiguously calls for annual compounding of interest, the calculation methods used by Mr. Shuster are contrary to the Agreement.

---

[5] Plaintiff also argues that defendants are bound by Mr. Hovis' statement in Hearing Help's voluntary Chapter 11 petition about the amount owed by Hearing Help on Mr. Moses' investment. Docket No. 39 at 2. Because the argument was made in the reply brief and defendants have not had an opportunity to brief the issue of whether it constitutes a judicial admission, the Court will not consider this argument.

According to defendants, plaintiff was owed $112,451.95 as of February 2017, less any amounts received pursuant to the Hearing Help bankruptcy. Docket No. 36 at 15, ¶ 69. Defendants' calculations differ from those of plaintiff's in several ways. In defendants' calculations, the dates that mortgage payments were made varied from month to month, instead of all falling on the twelfth of the month. Docket No. 36-4.[6] Additionally, defendants list a payment occurring in November 2012. *Compare* Docket No. 36-4 *with* Docket No. 30-4 at 21. Plaintiff claims no payment was due in November 2012 because of a mortgage refinance. PSUMF 22. Notwithstanding the inclusion of a mortgage payment for November 2012 in defendants' calculation, defendants admit that Hearing Help did not make a mortgage payment that month. Docket No. 36 at 6, ¶ 25. Given the disputes regarding the payments made by Hearing Help and regarding the method of calculation, the Court finds that there are genuine issues of material fact with respect to the amount plaintiff is owed pursuant to the guaranties.

### 3. Attorney Fees and Costs

Plaintiff claims that he is owed attorney fees and costs. Docket No. 30 at 12. Plaintiff does not, however, provide any evidence to substantiate his attorney fees and costs or show that such expenses were reasonable. The Court will, therefore, deny plaintiff's request without prejudice for failing to comply with D.C.COLO.LCivR 54.3(b). *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 153 (Ill. App. 1995) (holding that "open-ended" damages for attorney fees pursuant to a contract could be

---

[6] Defendants' calculation method appears to compound interest into the investment balance on the date that each mortgage payment was made, which is similar to Mr. Shuster's calculations, but also contrary to the Agreement. Docket No. 36-4.

determined by the court without infringing defendant's Seventh Amendment rights).

### 4. *Defendants' Inability to Pay*

Defendants claim that they have not paid the amounts owed on the guaranties because they lack the necessary funds. Docket No. 36 at 14-15, ¶¶ 68, 72. Defendants do not identify any language in the Agreement or authority that indicates their ability to pay is relevant to whether summary judgment should be entered on plaintiff's breach of guaranty claim.

### 5. *Conclusion*

The Court will enter partial summary judgment of liability on plaintiff's breach of guaranty claim pursuant to Fed. R. Civ. P. 56(g). The amount of damages, however, depends on disputed issues of fact.

### B. **Fraud Claim**

"A plaintiff seeking to prevail on a claim of fraud must establish: (1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012).[7] "For ease of understanding, Colorado's Model Jury Instructions unpack the fifth element into its

---

[7] Plaintiff argues that Colorado law applies to his fraud claim and that Illinois law does not differ in material respects. Docket No. 30 at 2-3. Defendants also analyze the fraud claim under Colorado law. Docket No. 36 at 16, ¶ 73. Some negotiations between plaintiff and Mr. Hovis concerning the Agreement were conducted in Colorado. PSUMF 3. Accordingly, the Court will apply Colorado law to plaintiff's fraud claim. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

three discrete sub-parts, requiring the plaintiff to prove separately actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citing CJI–Civ. 19:1 (2013) (listing seven elements for a fraud claim)).

### 1. Ms. Hovis

As defendants argue, plaintiff does not present evidence that Ms. Hovis made any misrepresentations of material fact. Docket No. 36 at 16, ¶ 74. Plaintiff does not argue otherwise. Docket No. 39 at 10. Accordingly, the Court will deny summary judgment on plaintiff's fraud claim with respect to Ms. Hovis.

### 2. Mr. Hovis

Defendants focus on two aspects of Mr. Hovis' alleged fraud in claiming that genuine issues of material fact preclude summary judgment – whether Mr. Hovis knew his 2009 financial statement was false and whether plaintiff reasonably relied on that financial statement. Docket No. 36 at 16-18, ¶¶ 75-79. While it is a close question, the Court is unable to conclude that no reasonable jury could fail to find that Mr. Hovis' valuation and disclosure of his assets and liabilities was "made with a reckless disregard of its truth or falsity" or concealed a "material existing fact, that in equity and good conscience should be disclosed." *Bemel Assocs., Inc. v. Brown*, 435 P.2d 407, 409 (Colo. 1967) (internal quotation marks omitted). Likewise, the Court cannot conclude as a matter of law that plaintiff reasonably relied on Mr. Hovis' 2009 financial statement. Both issues turn, to some extent, on the credibility of plaintiff's and Mr. Hovis' claims about their subjective mental state, which the Court cannot properly

resolve on summary judgment. Accordingly, the Court will deny summary judgment on plaintiff's fraud claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 30] is **GRANTED** in part and **DENIED** in part as set forth in this order. It is further

**ORDERED** that partial summary judgment is entered pursuant to Fed. R. Civ. P. 56(g) on plaintiff's breach of guaranty claim in favor of plaintiff Robert E. Moses and against defendants James E. Hovis and Catherine Hovis.

DATED September 12, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge